IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 CR 15-2 |
| | ) | |
| v. | ) | Honorable Judge Manish S. Shah |
| | ) | |
| CHRISTOPHER KLUNDT and DAVID SARGENT, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DAVID SARGENT'S MOTION TO ADMIT EVIDENCE OF OTHER OPTIONS TRADES AND TO PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE OF OTHER TIPPING CONDUCT FOR <u>LACK OF EVIDENCE</u>**

Defendant, DAVID SARGENT, by his attorneys, CHRISTOPHER T. GROHMAN and CARLY CHOCRON, hereby submits his Motion in Limine to Admit Evidence of Other Trades and to Preclude the Government from Introducing Evidence of Other Tipping Conduct for Lack of Evidence. In support of this motion, Defendant, through counsel, states as follows:

I. Introduction

Sargent and his co-defendant, Christopher Klundt, were charged by indictment on January 10, 2022 with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 (Count 1); securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) and 17 C.F.R. § 240.10b-5 (Counts 2-4) and 18 U.S.C. § 1348(1) (Counts 5-7). These charges relate solely to the government's

allegation that on May 1, 2020, Sargent purchased options and stock in Chegg, Inc., where Christopher Klundt was an employee. Sargent sold the stock and options on approximately May 5, 2020, for a profit of approximately $110,000. Both Sargent and Klundt pleaded not guilty. Trial is scheduled to begin on January 9, 2023.

## II. Factual Background

Longtime friends from college Klundt and Sargent founded an online educational platform called StudyBlue in 2007. Once StudyBlue was up and running, Sargent left for law school while Klundt continued to build the company. In July of 2018, StudyBlue was acquired by Chegg, Inc., a leader in the online education industry, and Klundt began working for Chegg as a Vice President of Content, Knowledge, and Platforms. This case arises from certain Chegg trades Sargent made in May 2020 that the government alleges were a result of inside information from Klundt.

Between college and present time, Sargent and Klundt stayed close even though they lived in different cities by communicating through hundreds of calls, texts, emails, and FaceTime. They were groomsmen in each other's weddings, their wives became close friends, and they often traveled together. When the COVID-19 pandemic hit, as with many people during the pandemic, Sargent, Klundt, and their wives turned to online platforms such as Zoom to "hangout" and play virtual games.

## Sargent's Trading History

Sargent always had a general interest in trading stocks and in 2018 he began dabbling in Robinhood, which was a newer, user-friendly, trading phone application. When he first started trading in Robinhood, Sargent largely invested in technology companies, which were popular investments at the time. The Robinhood records show that Sargent, starting in early 2018, traded in various stocks, including Facebook, Tesla, Amazon, Netflix, etc. *See* Exhibit A (draft Robinhood summary chart).[1]

In 2019, Sargent's high school friend, David Primer, told Sargent about his desire to start a hedge fund using a trading algorithm that Primer developed that specialized in trading volatility in the marketplace. Sargent and Primer decided to partner in the endeavor – Sargent provided the funds and Primer developed the algorithm and executed the trades. In late summer 2019, Sargent and Primer opened an equity trading account and a futures trading account with TradeStation, an online desktop trading platform. The agreement was that Sargent would put up the money for the trades and that Primer would use his algorithm to make the trades, which primarily consisted of buying options of the VIX, a volatility index. Between approximately

---

[1] All summary charts are draft charts subject to revision prior to admission into evidence at trial. Defendant has tendered these charts to the government in advance with the understanding that they cannot be used in cross examination.

September 2019 and April 2020, Sargent and Primer profited significantly, in excess of $50,000 using this strategy.

When COVID-19 shut the world down in early 2020, Sargent and Primer saw an opportunity to invest in "COVID-positive" stocks. They reasoned that since COVID had depressed the stock market across the board, certain stocks were artificially depressed because they would benefit from the pandemic; and vice versa, some stocks were not depressed enough, since they would virtually stop functioning during the pandemic. This was primarily Sargent's idea, but since Sargent was not competent to trade in options, he asked Primer to come up with the options mix for the various trades. They began this strategy in March 2020, shorting airline stocks. Over the next several months, they purchased call options in other COVID-positive stocks, including McKesson and Steris (healthcare companies, purchased on May 13 and May 19, 2020) and New Oriental Education and K12 Inc. (other online education companies, purchased in June and July 2020).[2] A draft summary chart of the non-CHEGG option purchases is attached as Exhibit B. Sargent likewise purchased individual stocks in his Vanguard account based on the same COVID-positive

---

[2] Based on the text messages between them, it is provable that Prime and Sargent listened to the Steris Earnings call on 5/14/2020 and then to McKesson on 5/20/2020, much as they did the Chegg earnings call on 5/04/2020.

4

strategy. A draft copy of a chart summarizing those trades is attached hereto as Exhibit C.

## Timeline of Chegg Trades

CHEGG was one of the stocks that Sargent thought would flourish during the pandemic because education was being transferred from the classroom to the virtual world, and CHEGG was an online education company. Sargent had a particular interest in this stock because of his former association with StudyBlue and because his good friend worked there and, like most friends, they discussed the basics of their work lives during their communications. For example, below is a text between the two of them from June 2019 discussing Chegg's economic performance.

> From: +18478463638 Dave Sargent
> (owner)
> Yah, crazy schedule but it's been fun for the most part. How's chegg? CNBC did a story that the stock is up big 👍
>
> Participant Delivered Read Played
> ▪
> Unknown
>
> Status: Read
> Read: 6/19/2019 8:56:25 PM(UTC-7)
> 6/19/2019 8:56:17 PM(UTC-7)
> Source Info:
> CK iPhone 12/mobile/Library/SMS/sms.db : 0x145AFE8 (Table: message, handle, Size: 53620736 bytes)
>
> (owner)
> To: +18478463638 Dave Sargent
> Yeah saw that. Stock is good. Worried it won't last forever so cash out quick
>
> Participant Delivered Read Played
> ▪
> +18478463638 Dave Sargent
>
> Status: Sent
> 6/19/2019 8:56:49 PM(UTC-7)
> Source Info:
> CK iPhone 12/mobile/Library/SMS/sms.db : 0x145AD6E (Table: message, handle, Size: 53620736 bytes)

In late April/early May 2020, as part of their COVID-positive strategy, Sargent decided to buy CHEGG stock and CHEGG options. On May 1, 2020, Sargent purchased approximately $20,000 in CHEGG call options with a strike price of $40 and approximately $10,000 in CHEGG call options with a strike price of $50 (the CHEGG stock price on May 1, 2020 fluctuated just north of $42, so 2/3rds of these call options were "in the money"). On that same date,

6

Sargent purchased over $11,000 in CHEGG stock itself in his Vanguard account.

It is the government's theory that Klundt tipped Sargent about CHEGG's earnings that were to be publicly reported on May 4, 2020. It is Defendant's theory that Sargent was speculating in COVID-positive stocks, including CHEGG, and had Primer create the optimal mix of options to speculate on various companies that they thought would profit during the pandemic.

In addition to trading Chegg, airline stocks, and other healthcare/education stocks in the spring and summer of 2020, Sargent continued to trade COVID-positive stocks for the duration of 2020. He was "leading the market" so to speak, given that even after the earnings call on May 4, 2020, he still had the opinion that Chegg's stock was undervalued. Shortly after the earnings call on May 5 and 6, 2020, he sold puts in Chegg stock, betting that the price would stay above $55 between May 6, 2020 and May 15, 2020. He then bought more calls in June 2020, generating a profit, additional calls in July and August, generating a loss, and Chegg stock in October, which he sold at a for a loss. A chart of all Sargent's Chegg trading activity appears below.

| Purchase Date | Platform | CHEGG Trade | Units | Cost of Purchase | Sales Trade Date | Sale Proceeds | Profit/Loss |
|---|---|---|---|---|---|---|---|
| 5/1/2020 | Vanguard | Chegg | 271 | $11,415.51 | 6/19/2020 | $18,472.31 | $7,056.80 |

7

| Purchase Date | Platform | CHEGG Trade | Units | Cost of Purchase | Sales Trade Date | Sale Proceeds | Profit/Loss |
|---|---|---|---|---|---|---|---|
| 5/1/2020 | TradeStation | CHEGG INC MAY 15,2020 @ 40 CALL 100 MULTIPLIER | 48 | $19,714.78 | 5/5/2020 | $65,104.68 | $45,389.90 |
| 5/1/2020 | TradeStation | CHEGG INC MAY 15,2020 @ 50 CALL 100 MULTIPLIER | 166 | $10,050.71 | 5/5/2020 | $67,967.45 | $57,916.74 |
| 5/5/2020 5/6/2020 | TradeStation | CHEGG INC MAY 15, 2020 @ 55 PUT 100 MULTIPLIER | 68 | | | $10,210.52 | |
| 6/12/2020 | Interactive Brokers | CHEGG 16 Oct 20 60.0 Call Options | 8 | $5,045.95 | 6/19/2020 | $10,640.60 | $5,594.65 |
| 6/12/2020 | TradeStation | CHEGG INC OCT 16,2020 @ 55 CALL 100 MULTIPLIER | 24 | $19,457.39 | 6/23/2020 7/10/2020 | $45,336.54 | $25,879.15 |
| 6/15/2020 | TradeStation | CHEGG INC OCT 16,2020 @ 60 CALL 100 MULTIPLIER | 33 | $24,787.04 | 6/19/2020 | $39,907.00 | $15,119.96 |
| 6/15/2020 | TradeStation | CHEGG INC OCT 16,2020 @ 65 CALL 100 MULTIPLIER | 53 | $29,502.38 | 6/19/2020 | $49,786.41 | $20,284.03 |
| 6/24/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 65 CALL 100 MULTIPLIER | 31 | $20,140.01 | 7/2/2020 | $27,568.32 | $7,428.31 |
| 6/24/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 70 CALL 100 MULTIPLIER | 20 | $9,415.33 | 7/1/2020 | $12,384.35 | $2,969.02 |
| 7/14/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 70 CALL 100 MULTIPLIER | 34 | $20,068.56 | 7/15/2020 7/20/2020 | $30,231.70 | $10,163.14 |
| 7/24/2020 | Vanguard | Chegg | 200 | $14,603.84 | 8/7/2020 | $17,851.61 | $3,247.77 |
| 7/24/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 75 CALL 100 MULTIPLIER | 36 | $19,942.59 | 8/7/2020 | $44,615.34 | $24,672.75 |
| 7/24/2020 8/3/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 80 CALL 100 MULTIPLIER | 80 | $49,136.32 | 8/4/2020 | $44,752.52 | ($4,383.81) |
| 7/24/2020 8/3/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 85 CALL 100 MULTIPLIER | 126 | $84,220.10 | 8/4/2020 | $51,668.50 | ($32,551.60) |
| 8/3/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 90 CALL 100 MULTIPLIER | 46 | $30,383.77 | 8/4/2020 | $9,400.93 | ($20,982.84) |
| 8/3/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 95 CALL 100 MULTIPLIER | 12 | $6,131.20 | 8/4/2020 | $1,908.73 | ($4,222.47) |
| 8/3/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 100 CALL 100 MULTIPLIER | 15 | $6,012.75 | 8/4/2020 | $1,767.18 | ($4,245.57) |
| 8/3/2020 | TradeStation | CHEGG INC AUG 21,2020 @ 105 CALL 100 MULTIPLIER | 9 | $2,871.65 | 8/4/2020 | $825.31 | ($2,046.34) |
| 10/26/2020 | Robinhood | CHGG 11/20/2020 Call $70.00 | 2 | $3,580.00 | 11/4/2020 11/20/2020 | $944.95 | ($2,635.05) |
| 10/26/2020 | Robinhood | CHGG 11/20/2020 Call $75.00 | 9 | $12,420.00 | 11/4/2020 11/20/2020 (6 options expired) | $1,229.96 | ($11,190.04) |

In addition to the non-Chegg options discussed above that appear in Exhibit B, Sargent continued his COVID-positive trading strategy by purchasing stocks that he thought would outperform the market during the summer and fall of 2020. These include educations stocks, online gambling stocks, and others. A chart of those purchases appear below.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/24/2020; 7/27/2020 | New Oriental Education & Technology Group Inc SPON ADR | 71 | $ 9,751.28 | 7/30/2020 | $ 9,816.24 | $ 64.96 |
| 7/30/2020 | Verb Technology Co Inc | 9,555 | $ 9,891.70 | | | |
| 8/3/2020 | Draftkings Inc CL A | 1 | $ 32.58 | | | |
| 8/10/2020 | Verb Technology Co Inc | 13,000 | $ 17,230.39 | | | |
| 8/10/2020 | Verb Technology Co Inc | 492 | $ 637.14 | | | |

*See* Exhibit C.

### Chegg's Repurchase Plan in June 2020

On June 16, 2020, Chegg announced a $500 million securities repurchase program covering company stock or convertible notes. *See* Exhibit D. As discussed above, shortly prior to this date, on June 12 and 15, 2020, Sargent and Primer purchased additional CHEGG call options, which they sold for a profit on June 19, June 23, and July 10.

According to Tracey Ford, Chegg's Vice President of Investor Relations, only Chegg's communication team, lawyers, accounting team, and an outside consulting team knew about this buy-back plan prior to the press release on June 16, 2020. Exhibit E. Klundt was not part of any of those teams. Further,

9

by the FBI's own admission, attorneys for Chegg specifically stated that Klundt did not have knowledge that Chegg was going to announce this buy back prior to the public release of this information on June 16, 2020. Exhibit F. Further, the FBI's search of Klundt's phone and text messages revealed no evidence that he knew of this buy back prior to June 16, 2020, nor that he communicated to Sargent regarding the buy back. Further, there was public information as early as June 6, 2020 regarding the buy back.[3] Moreover, Chegg never went through with the repurchase program and the stock price was not adversely affected.

III. Argument

    A. **The Court Should Allow Defendant Sargent to Introduce Evidence of All His Trading Activity In Support of His Theory of Defense, Including Those CHEGG Trades Made After May 2020**

The evidence will show that at the start of the pandemic the market suddenly dipped by 35 percent in response to investor fears about the economy. Naturally, smart investors thought that some businesses would fare better than others during a national shut down. Online gaming, liquor, online education, healthcare, and the like are natural guesses for COVID beneficiaries, even novice investors like Sargent. On the flip side, since people

---

[3] See https://seekingalpha.com/article/4516738-chegg-massive-buybacks-and-possible-buyout-make-it-a-buy.

10

are unlikely to fly during a national shut down, a pandemic was unlikely to be a good time to own an airline stock.

Working with Primer on his algorithmic trading in late 2019 and early 2020, Sargent profited in excess of $50,000. He decided to bet some of this money on a COVID+ strategy. He started on March 13, 2020 by buying puts (shorting the market) in airline stock. On April 2, 2020, he bought a mix of puts in different airlines. His next COVID+ trade was in Chegg on May 1, 2020. He continued this COVID+ strategy after May 1, and throughout 2020, buying stocks and options in a variety of healthcare companies, online education companies, online gambling companies, and other such companies he thought were undervalued by the market during the pandemic. He also continued to trade in Chegg options after May 1, 2020, notably on May 5 a day after the earnings call, and throughout the remainder of 2020. In fact, the approximately $40,000 Sargent invested in Chegg on May 1, 2020 pales in comparison to the over $250,000 he invested in other COVID+ stocks; for example, he invested over $75,000 in Verb Technologies in one week alone in late July 2020. *See* Exhibit A.

He is charged with insider trading related to his actions on May 1, 2020. Preliminary conversations with the government indicate that the government has an objection to Defendant Sargent introducing evidence of his other trades in late 2019 and 2020 because the government alleges these trades are not

relevant to the charges. Putting aside the difficulty of avoiding mentioning these trades given that they are contained in the records the government intends to introduce at trial, while the government may be right that these trades are not relevant to the government's theory of the case, they are certainly relevant to Mr. Sargent's defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 689–690 (1986) quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Here, exclusion of crucial evidence relating to Mr. Sargent's defense would undermine this principle and almost certainly result in a new trial being ordered on appeal. *See Holmes v. South Carolina*, 547 U.S. 322 (2006); *Harris v. Thompson*, 698 F.3d 609, 612 (7th Cir. 2012).

> **B. The Court Should Preclude the Government from Arguing that Sargent's Decision to Purchase Additional Chegg Options in June 2020 was the Result of Receiving Insider Information from Klundt Because the Government Lacks an Adequate Evidentiary Basis to Support Such a Theory**

Based on conversations with the government, should the Court allow Defendant Sargent to introduce evidence of his trades after May 1, 2020, it is the government's intent to argue that Klundt provided Sargent with insider information regarding Chegg's proposed stock buy back prior to Sargent

12

purchasing the Chegg call options in June 2020. Normally, this would be totally fair. However, the government lacks an adequate (or frankly any) evidentiary basis for making this argument. Evidence that Sargent committed another act of uncharged insider trading is essentially other-act evidence governed by Fed. R. Evid. 404(b). In order for other-act evidence to be admissible, there needs to be sufficient evidence for a jury to find that a defendant committed the other act. *See Huddleston v. United States,* 485 U.S. 681 (1988) citing Fed. R. Evid. 104(a) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). In the Seventh Circuit, a preponderance standard is applied to determine whether the government has sufficient evidence to put other-act evidence before the jury. *United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005) (citing *Huddleston v. United States,* 485 U.S. 681, 690 (1988)); *United States v. Reyes*, 542 F.3d 588, 592-93 (7th Cir. 2008).

Here, the government lacks the ability to prove by a preponderance of the evidence that Klundt tipped Sargent regarding the June 16, 2020 buy-back announcement. The government acknowledges Chegg employees would testify that Klundt had no knowledge of the stock buy back before it was publicly announced. *See* Exhibits E and F. The government has retrieved all of the text messages between Sargent and Klundt, and there is nary a word about a buy back in any of these texts. And according to their phone records, it is

13

unlikely Sargent and Klundt spoke over the phone from May 26, 2020 through August 16, 2020[4], so unless they communicated by telepathy or carrier pigeon, the government does not have a good faith basis for arguing that Klundt tipped Sargent about this buy back. Further, the government cannot prove the materiality of any information Klundt may have provided, especially in light of the Seeking Alpha article on June 6, 2020, stating Chegg's decision to increase capital for a buy back. As such, the Court should preclude the government from introducing any evidence or argument regarding the theory that Klundt tipped Sargent regarding the June 2020 buy back at any point during the trial.

## IV. Conclusion

For the foregoing reasons, the Court should allow Defendant Sargent to introduce evidence of all of his COVID-positive trades, including the CHEGG trades executed from May 5, 2020 through October 2020. Because the government lacks an adequate evidentiary foundation, the Court should

---

[4] There are two telephone call contacts between Sargent and Klundt: (1) Sargent called Klundt on June 11, 2019 and the call lasted 6 seconds; and (2) On June 14, 2020 Klundt called Sargent but there is no indication the line connected.

14

preclude the government from arguing that Sargent traded in June 2020 based on insider information received from Klundt.

Dated: December 21, 2022          Respectfully submitted,

/s/ Christopher Grohman
Christopher T. Grohman
cgrohman@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
(312) 212-4943

/s/ Carly Chocron
Carly A. Chocron
cchocron@taftlaw.com
Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2600
Chicago, Illinois 60601-4208
(312) 836-4158

*Counsel for David Sargent*