UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 22 CR 15 |
| | ) | Judge Manish S. Shah |
| CHRISTOPHER KLUNDT and | ) | |
| DAVID SARGENT | ) | |

**GOVERNMENT'S POSITION PAPER REGARDING THE SUFFICIENCY OF THE ALLEGATIONS CONTAINED IN COUNTS 5-7 OF THE INDICTMENT**

The UNITED STATES OF AMERICA respectfully submits the following position paper regarding the sufficiency of the allegations contained in Counts 5-7 of the indictment, which charge defendants with securities fraud under 18 U.S.C. 1348(1).

## BACKGROUND

On January 10, 2022, a federal grand jury returned an indictment charging defendants Christopher Klundt and David Sargent with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, three counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) and 17 C.F.R. § 240.10b-5, and three counts of securities fraud, in violation of 18 U.S.C. § 1348(1), in connection with insider trading. Dkt. 1. The indictment alleges that Christopher Klundt and David Sargent misappropriated material, nonpublic information from Chegg, Inc. and used it for their personal benefit, violating a duty to Chegg to not to trade on that information.

Specifically, the indictment alleges in Paragraph 3—which is incorporated into Counts 5-7—that Klundt and Sargent misappropriated material, nonpublic information from Chegg for themselves, when Klundt, who was under a duty to protect the confidentiality of this information and not use it or provide it to others to use, gave the information to Sargent for Sargent's use. Dkt. 1, at 3(a). It further alleges that Sargent knew Klundt had provided him with this inside information in breach of his duties to Chegg. *Id*.

It alleges that sometime in April or early May 2020, but in any event no later than May 1, 2020, Klundt learned through his employment at Chegg material, nonpublic information, that on May 4, Chegg, Inc. would announce strong earnings for 1st Quarter 2020. Dkt. 1, at ¶ 3(b). Klundt had a duty to Chegg not to trade on its securities while in possession of that information and not to tip the information to anyone else. *Id*. It alleges that Klundt provided this information to Sargent as a gift with the intention of benefitting Sargent, knowing Sargent would use the information to trade in Chegg's securities. *Id*., at ¶ 3(c). It alleges that Sargent knew the information Klundt gave him was material, nonpublic information, and that Klundt had a duty to Chegg not to misappropriate the information for his personal benefit. *Id*., at 3(d).

The indictment alleges that Klundt and Sargent had a telephone call on May 1, shortly after Klundt attended an internal Chegg meeting where 1st Quarter earnings were discussed. *Id*., at ¶¶ 3(e). The indictment then goes on to allege in great detail Sargent's purchase and sale of Chegg stocks and call options. *Id*., at

¶¶ 3(e), 3(f), 3(h), and 3(i). It then alleges that in September 2020, Klundt falsely responded to FINRA's inquiry that he did not recognize Sargent's name on the list of individuals and entities he was told to review. *Id.*, at ¶ 3(j).

## ARGUMENT

**1. Defendant's Objections to Counts Five through Seven Were Waived**

As an initial matter, defendants have waived their right to seek dismissal of a portion of this indictment. Under Rule 12(b)(3)(B), a defendant who wishes to make a motion alleging a defect in the indictment must do so before trial if the basis for the motion is reasonably available and the motion can be determined without a trial on the merits. This includes motions claiming the indictment lacks specificity or fails to state an offense. *See* Rule 12(b)(3)(B)(iii) and (v). *See also United States v. Corrigan*, 912 F.3d 422, 427-29 (7th Cir. 2019)("Challenges to the sufficiency of the indictment must be raised in a motion to dismiss prior to trial [citation omitted], else they are waived, absent good cause."); *United States v. Hart*, 673 F.Supp. 932, 937 (N.D. Ind. 1987)(defendant waited until opening statement to challenge the sufficiency of the indictment, thus waiving any and all defenses and objections based upon sufficiency of the indictment.).

To the extent defendants have made a motion to dismiss Counts Five through Seven—and it is not clear they have—their motion was made after the trial commenced. An argument that the indictment improperly charged securities fraud under 18 U.S.C. § 1348 by not adequately alleging language to more clearly style the scheme as an embezzlement in the nature of the one charged in *Carpenter v. United*

3

*States*, 484 U.S. 19 (1987), has been available to defendants since the case was first charged, and such a motion could have been determined without a trial on the merits.

As a result, any objection the defendants have to Counts Five through Seven should be deemed waived. Moreover, if those objections are not waived, the defendants' failure to move to dismiss Counts Five through Seven pretrial should be considered by the Court as a clear indication that the defendants have understood all along the nature of the securities fraud scheme charged in those counts.

### 2. Securities Fraud is Adequately Pled in Counts Five through Seven

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim P. 7(c)(1). An indictment is deemed sufficient if, viewed in the light most favorable to the government, it (1) states the elements of the offense charged, (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense, and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002). To successfully challenge an indictment's sufficiency, a defendant must demonstrate that the indictment did not allege a required element and he suffered prejudice as a result. *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). "An indictment suffices when it notifies the defendant of the charge, which can be done without parroting the words of the statute-or, for inside-trading doctrine, parroting the language of the Supreme Court's decisions." *United States v. Weller*, 40 F.4th 563,

4

566 (7th Cir. 2022). The notice bar is not a high one, and even an implicit allegation suffices. *See id.* (*citing United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)).

Counts Five through Seven adequately plead the elements of securities fraud under 18 U.S.C. § 1348(1). Those elements are: (1) a scheme to defraud, (2) defendant's knowing execution of the scheme, (3) that he acted with the intent to defraud, and (4) the scheme was in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934 or that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934. Counts Five through Seven allege each of those elements.

As to the specifics of the alleged securities fraud, there is no ambiguity as to the charged scheme. Counts Five through Seven explicitly incorporate by reference Paragraphs 1 and 3 of the indictment. Paragraph 1 alleges that Klundt owed a duty of trust and confidence to maintain the confidentiality of material, nonpublic information he learned as part of his job, and was prohibited from trading Chegg stock based on that information. Dkt. 1, at ¶ 1(h). It also alleges that Chegg had a written policy expressly forbidding insider trading, based on material, nonpublic information about Chegg or the companies with which it did business, in connection with trading securities. Paragraph 3 alleges the existence of Klundt's duty to Chegg not to trade on its securities while in possession of that information and not to tip the information to anyone else, Dkt. ¶ 3(b), as well as Sargent's knowledge that Klundt provided him the inside information in violation of his duty to Chegg, *id.*, at ¶ 3(d).

5

The remaining sub-paragraphs of Paragraph 3 apprise the defendants in detail of how the scheme worked. For instance, they allege where and when Klundt obtained the inside information, when and how he conveyed the information to Sargent, the specific trades Sargent made based on this information, and the false response that Klundt provided to FINRA's inquiry. The entire scheme is clearly laid out for the defendants and apprise them of the details of the charges against them.

The fact that the alleged conduct underlying both the Title 15 charges (Counts 2-4) and the § 1348 charges (Counts 5-7) is the same has no bearing on the adequacy of the § 1348 charges. Charges for standard insider trading under Title 15 and securities fraud under § 1348 can be based on the same underlying conduct.[1]

Both statutes criminalize the misappropriation of material, nonpublic information. *See United States v. Blaszczak*, 947 F.3d 19, 34-37 (2nd Cir. 2019), *remanded and vacated on other grounds*, 2022 WL 17926047 (2nd Cir. Dec. 27, 2022)(following the Supreme Court's opinion in *Kelly v. United States*, 140 U.S. 1565 (2020), the Second Circuit concluded that the misappropriated government information did not constitute property). There, in determining whether to graft the "personal benefit" requirement of insider trading under Title 15 to fraud under §§ 1343 and 1348, the Second Circuit Court of Appeals noted that in both Title 15 insider trading and Title 18 fraud, the term "defraud" encompasses the "so-called 'embezzlement' or 'misappropriation' theory of fraud." *Blaszczak*, 947 F.3d at 35.

---

[1] "'The Federal Criminal Code is replete with provisions that criminalize overlapping conduct,' and so '[t]he mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either.'" *Blaszczak*, 947 F.3d at 37, quoting *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

"The undisclosed misappropriation of confidential information, in breach of a fiduciary or similar duty of trust, 'constitutes fraud akin to embezzlement.'" *Id.* Noting that both Title 15 insider trading and the Title 18 fraud statutes are grounded in the embezzlement theory, the Court in *Blaszczak* concluded that since a breach of duty is inherent in embezzlement, there is no need for the government to prove a breach of duty in a specific manner, including an insider's receipt of a personal benefit. *Id.*, at 36. Moreover, the Court noted that both Title 15 securities law and § 1348 concern the general matter of securities law, and that in enacting § 1348 as part of the Sarbanes-Oxley Act of 2002, Congress intended for § 1348 to be more general and less technical than the Title 15 fraud provisions, and that it "was intended to provide prosecutors with a different—and broader—enforcement mechanism to address securities fraud than what had been previously provided in the Title 15 fraud provisions . . ." *Id.*, at 36-37.

The factual allegations underlying the conspiracy and insider trading charged in Counts One through Four are identical to those underlying the securities fraud scheme charged in Counts Five through Seven. That set of factual allegations appropriately undergirds the Title 18 counts, and they clearly have been incorporated into those counts. There is no ambiguity as to what is charged in the Title 18 counts. There is no need for the indictment to additionally allege in Counts Five through Seven that defendants embezzled the confidential information, as the concept of embezzlement is embedded in the Title 18 fraud statutes.

7

Moreover, the respective duties owed are no different between the two sets of statutes, as applied to this case. The indictment alleges that Klundt owed a duty to Chegg not to disclose the inside information, and that Sargent knew that. Dkt. 1, at ¶¶ 3(a), 3(b), 3(d). That duty was the same for purposes of the charges under Title 15 and Title 18.

Those same allegations of defendants' duty to Chegg also satisfy the pleadings requirements for the § 1348 charges. A company's confidential information qualifies as property to which the company has a right of exclusive use, and misappropriation of that information in violation of a fiduciary duty "is akin to embezzlement." *United States v. O'Hagan*, 521 U.S. 642, 654 (1997)(citing *Carpenter v. United States*, 484 U.S. 19, 25-27 (1987)). In *Blaszczak I*, the Court explained that for fraud offenses under Title 15 and Title 18 (including § 1348(1)), the term "defraud" encompasses the "misappropriation" or "embezzlement" theory of fraud. *Blaszczak I*, 947 F.3d at 35. The allegations contained in Paragraphs 1 and 3—that are incorporated into Paragraphs 5-7—sufficiently allege Klundt and Sargent's misappropriation of Chegg's confidential information to put defendants on notice of the conduct with which they were charged under § 1348(1). While the personal benefit allegations of paragraphs 1 and 3 are not required to prove securities fraud under § 1348(1), their incorporation into Counts 5-7 do not undermine the adequacy of those pleadings.

The government has charged the Title 15 and Title 18 schemes in this case in a manner consistent with other insider trading cases charging securities fraud under both statutes. Indictments from *Blaszczak*, 17 CR 357 (S.D.N.Y), *United States v.*

8

*Chow*, 17 CR 667 (S.D.N.Y.), and *United States v. Ramsey*, 19 CR 269 (E.D. Pa.), are attached as Exhibits A, B, and C, respectively. In each indictment, the Title 18 securities fraud charges largely incorporate by reference allegations made in support of conspiracy or Title 15 securities fraud charges. None of these cases include allegations of a separate scheme with a different duty imposed under Title 18, or differentiate the concepts of embezzling versus misappropriating material, non-public information.

In *Blaszczak, et al*, the superseding indictment alleged multiple securities fraud violations under § 1348 by incorporating the prior allegations of the alleged § 371 conspiracy to violate various federal statutes—including insider trading under Title 15—and including the statutory language setting forth the elements of the offense. This indictment against Klundt and Sargent did the same thing. In *Blaszczak*, the indictment additionally alleged in each of the specific counts for § 1348 that defendants schemed to defraud by "improperly obtaining that [confidential] information through deceptive means and then converting that information to their own use . . ." *Id.*, at ¶¶ 88, 100. The indictment against Klundt and Sargent did not include that last language specifically, but such language is not necessary to put the defendants on notice of the charges in this case. The reason the *Blaszczak* indictment needed to add in that language was because the charged conduct occurred over a period of several years and involved the misappropriation of different confidential information at different times. In Count Ten of that indictment, defendants were alleged to have misappropriated confidential information related to CMS's proposed

9

radiation oncology rule between May and July 2012, in violation of § 1348. *Id.*, at ¶ 88. Whereas in Count Sixteen of that indictment, defendants were alleged to have misappropriated confidential information related to CMS's proposed kidney dialysis rule between January and July 2013. The addition of that language in those two counts served to put defendants on notice as to which confidential information was misappropriated at what time.

In the present case, the charged conduct occurred over a period of weeks, rather than years, and the confidential information that was misappropriated and improperly used was explained as the information shared in the earnings call. All that was clearly alleged in Paragraph 3, so defendants knew exactly what they were charged with misappropriating and using.

In *Chow*, the indictment alleged that defendant engaged in a conspiracy to commit insider trading under Title 15. Dkt. 2. Additionally, the indictment charged securities fraud under § 1348. In charging securities fraud, the indictment incorporated the allegations of the insider trading conspiracy and stated the statutory elements. It added language that "CHOW provided CC-1 with material non-public information regarding a potential merger between Lattice and Firm-1 and Firm-2 in anticipation that CC-1 would trade on it . . ." *Id.*, at ¶ 35.

In the present case, the indictment against Klundt and Sargent incorporates functionally similar language as contained in *Chow*. For example, Paragraph 3 clearly states that Klundt and Sargent misappropriated confidential and material information about Chegg's upcoming May 4 earnings call. Given the clear allegation

10

about the information alleged to have been misappropriated, there was no need to restate that fact in Counts 5-7.

Finally, in *Ramsey*, the indictment treats the § 1348 charge exactly as the government treats that charge here. The § 1348 charge in the *Ramsey* indictment incorporated by reference the allegations contained in the conspiracy charge in Count One of that indictment.

These indictments all treat dual Title 15 and Title 18 schemes in a manner similar to what the government has alleged in this case. There is no need to allege separate schemes, separate duties, or use the word embezzle versus misappropriate. Those concepts are all contained in paragraph 3, and provide defendants notice of the same.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court not dismiss Counts 5 through 7.

    Respectfully submitted,

    JOHN R. LAUSCH, JR.
    United States Attorney

By:   /s/*Matthew M. Getter*
    MATTHEW M. GETTER
    VIKAS DIDWANIA
    Assistant United States Attorneys
    219 S. Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    (312) 886-7651
    (312) 353-8898

Dated: January 16, 2023